UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LARRY DALE JOHNSON,

          Plaintiff,

             Case No. 3:11-cv-00514-ST

    v.

             FINDINGS AND
RAYMOND WESTERMEYER,        RECOMMENDATION

          Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Larry Dale Johnson ("Johnson"), a prisoner at the Sheridan Oregon Federal

Correctional Institution ("FCI Sheridan"), brings this action alleging mistreatment by his former

treating physician, Raymond Westermeyer, M.D.  After filing a grievance with the prison and

receiving no response, Johnson filed this case *pro se* claiming that Dr. Westermeyer violated

18 USC § 242, the Privacy Act, the Americans with Disabilities Act ("ADA"), and 42 USC

§ 1983 by depriving Johnson of his rights under the Eighth and Fourteenth Amendments, in

addition to claims for negligence and breach of contract.[1]  Johnson alleges that Dr. Westermeyer,

---

[1] Johnson filed the claims for negligence and breach of contract in a Supplemental Complaint (docket #18) which the court deems
to be part of the original Complaint (docket #2).

and other prison medical providers[2] under his direction, denied Johnson and other prisoners

adequate medical care by failing to answer medical request forms, train staff, maintain patient

records, and provide necessary surgeries and medications.

This court has jurisdiction over the federal claims under 28 USC § 1331 and

supplemental jurisdiction over the common law claims under 28 USC § 1367 because all claims

arise from the common nucleus of operative fact in which Johnson allegedly suffered from

Dr. Westermeyer's denial of adequate medical care.

Dr. Westermeyer filed a Motion for Summary Judgment (docket #138) against all

claims.[3]  For the reasons that follow, that motion should be granted.

## STANDARDS

Summary judgment may be granted if "no genuine issue" exists regarding any material

fact and "the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  The moving

party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317,

323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the

pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing

FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but

only determine[] whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F3d

1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is

'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material

fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989)

(citation omitted).  The substantive law governing a claim or defense determines whether a fact

---

[2] Johnson references other medical staff members, including Michael Cash (Supplemental Complaint, p. 1), but named only Dr. Westermeyer as a defendant.
[3] Johnson claims he was served an incomplete copy of the Motion.  In its Order dated January 28, 2014 (docket #164), this court gave Johnson an opportunity to file a supplemental response after being served the complete copy, but he filed none.

is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted).

The court must view the inferences drawn from the facts "in the light most favorable to the non-moving party." *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011) (citations omitted).

## UNDISPUTED FACTS

In support of his motion, Dr. Westermeyer submitted background facts supported by his own declaration (docket #141), as well as Johnson's medical records from both FCI Sheridan and pre-incarceration treatment with Miroslav P. Bobek, M.D.  Westermeyer Decl., Exs. A-E; Robinson Decl., Exs. F& G.[4]  Johnson also has submitted his own sworn declaration (docket #156).[5]

Dr. Westermeyer is an internal medicine physician who is licensed to practice in Oregon. Westermeyer Decl., ¶ 1.  His practice includes "temporary contract work" in which he substitutes for physicians who are on leave.  *Id*, ¶ 2.  Dr. Westermeyer performed temporary contract work for FCI Sheridan from June 1, 2010, to March 31, 2011.  *Id*.  Dr. Westermeyer states that his responsibilities were strictly limited to patient treatment and that he did not hold the position of medical director.  *Id*, ¶ 3.  Neither party contends that Dr. Westermeyer was a federal employee during this time, and he is represented by private counsel in this suit, not the Department of Justice.

Johnson is 66 years old and has received disability benefits since 1999.  *Id* at Ex. A, p. 1; Complaint, p. 4.  He has suffered from chronic back pain caused by an injury when he was 12 years old.  Robinson Decl., Ex. F, pp. 1-7.  On October 20, 2010, three months before his

---

[4] The parties have submitted documents with various attachments.  Citations to affidavits and declarations are identified by the last name of the affiant or declarant, and citations are to the paragraph(s) of and exhibits attached to the affidavit or declaration.
[5] The court treats Johnson's Memorandum and Sworn Declaration for Summary Judgment and Opposition to Defendant's Pleadings (docket #156) as both his declaration and his response to Dr. Westermeyer's Motion for Summary Judgment.

3 – FINDINGS AND RECOMMENDATION

incarceration, Johnson saw Dr. Bobek for the first time complaining of low back and leg pain. *Id* at 1. Dr. Bobek discussed Johnson's options which included "physical therapy, injection techniques and surgery if the symptoms are intolerable or he experiences worsening neurological deficit." *Id* at 4. Johnson explained that an orthopedic surgeon had recommended surgery in the past which he had declined. *Id* at 1. Given that Johnson had not undergone a conservative course of treatment in several years, Dr. Bobek recommended "an epidural steroid injection, as well as a dedicated physical therapy program." *Id* at 4. If the conservative treatment failed, Dr. Bobek would "consider a minimally invasive laminectomy and discectomy at the L3-4 level." *Id.*

Johnson called Dr. Bobek's office on November 8, 2010, requesting back surgery because he was "tired of the pain." *Id* at 5. Timothy A. Hall, P.A.C. ("Hall"), returned the call and again emphasized that a home exercise program, physical therapy, and steroid injections were the preferred course of treatment. *Id.* On December 13, 2010, at his last appointment with Dr. Bobek before his incarceration, Johnson reported that physical therapy was helping his symptoms, that his home exercise program would begin soon, and that he was scheduled for a steroid injection the following week. *Id* at 6. Dr. Bobek scheduled a follow-up appointment in six weeks. *Id* at 6-7. Johnson was unable to return to Dr. Bobek because he was incarcerated at FCI on January 14, 2011, after a short detention at Josephine County Jail. *Id* at Ex. G, pp. 1-2.

At FCI Sheridan, Dr. Westermeyer evaluated Johnson twice for back pain. Westermeyer Decl., ¶ 4. He first examined Johnson in the chronic care clinic on February 9, 2011, and agreed that he suffered from a back condition after observing "spondylisthesis by history L5 on S1." *Id*, ¶ 5 & Ex. A, p. 3. Johnson requested narcotic pain medication and told Dr. Westermeyer that Dr. Bobek had intended to perform surgery on his back. *Id.* Dr. Westermeyer advised Johnson

4 – FINDINGS AND RECOMMENDATION

that non-narcotics were preferable for his condition, in addition to physical therapy and exercise, and refused to prescribe narcotic pain medication before consulting with Dr. Bobek.  *Id*.

Dr. Bobek had prescribed narcotics for Johnson's back pain in the past.  *Id*.  However, Dr. Westermeyer believed that narcotic pain medication, while briefly alleviating pain, contributed to long-term pain by encouraging inactivity.  *Id*, ¶ 6.  He also believed that Johnson needed a careful physical and psychological assessment to determine whether he was an appropriate candidate for narcotics.  *Id.*  On February 16, 2011, Dr. Westermeyer left a voicemail message for Dr. Bobek, but did not receive a response before the next appointment with Johnson. *Id*, ¶ 7 & Ex. B, p. 1; Robinson Decl., Ex. F, p. 8.

On March 4, 2011, Dr. Westermeyer examined Johnson for a second and final time before he left his temporary post at FCI Sheridan.  Westermeyer Decl., ¶ 8.  Prior to the examination, Johnson "had been down with back pain for 3 days" and could "barely walk."  *Id*, Ex. C, p. 1.  Dr. Westermeyer described Johnson's condition as a "recurrence of lumbar pain with increased radicular symptoms left L5-S1 nerve."  *Id.*  Johnson requested a narcotic pain medication, hydrocodone, and became angry and yelled when Dr. Westermeyer explained why narcotics were inappropriate for treating his pain.  *Id*, ¶¶ 8, 10 & Ex. C, p. 1.  Noting the pain was "more chronic than acute," Dr. Westermeyer prescribed and ordered indomethacin, a non-steroidal, anti-inflammatory drug, which Johnson reported using in the past without side effects. *Id*, ¶ 8 & Ex. C, p. 1.  Dr. Westermeyer noted "[Johnson] will do better long-term with [narcotics]."  *Id* at Ex. C., p. 1.  Johnson was scheduled for another chronic care visit on March 8, 2011.  *Id* at 2.

5 – FINDINGS AND RECOMMENDATION

That same day after examining Johnson, Dr. Westermeyer spoke by telephone with

Dr. Bobek. *Id*, ¶ 9 & Ex. D; Robinson Decl., Ex. F, p. 8. Dr. Westermeyer recorded that

conversation in his notes as follows:

> Dr. Bobek says this man had spinal stenosis that was symptomatic when
> he had seen him, that surgery was indicated, but that surgery was no[t]
> urgent. Felt that with this problem if [the] inmate was incarcerated more
> th[an] 6 months, neurosurgical intervention should be considered.
>
> Discussed pain management, and Dr. Bobek fully endorsed and lauded
> keeping Mr. Johnson off narcotics. Noted the last time he had seen . . .
> Mr. Johnson their records shows him taking (he did not say by whom) 4
> Vicodins per day, not 8 as Mr. Johnson was telling me.

Westermeyer Decl., Ex. D. p. 1.

Dr. Bobek also summarized the conversation in his office notes as follows: "[Patient]

does <u>not</u> have neurosurgical emergency as of last time I saw him." Robinson Decl., Ex. F, p. 8.

On March 11, 2011, Johnson inquired about Dr. Westermeyer's consultation with

Dr. Bobek. Westermeyer Decl., ¶ 10 & Ex. E. Dr. Westermeyer responded in writing the same

day that "neurosurgery indicated but not emergency. Of course that can change if condition

changes" and that Dr. Bobek "supports keeping you narcotic-free." *Id*. Dr. Westermeyer also

stated he would check on Johnson "again" and that Johnson should write to him if he needed

anything. *Id*. Despite one attempt at a follow-up exam, Johnson refused to speak with

Dr. Westermeyer and did not send additional correspondence after March 11, 2011. *Id*, ¶¶ 10-

11. Dr. Westermeyer has not been involved in medical care provided to any inmate at FCI

Sheridan since he left the temporary contract position on March 31, 2011.[6] *Id*, ¶ 12.

Johnson attests that during his initial examination, Dr. Westermeyer stated that he "was

acting as medical director for Regional Director Stephen Davis DO who was in California and

---

[6] Johnson concedes that Dr. Westermeyer left FCI Sheridan on March 31, 2011, but later claims that he was Dr. Westermeyer's patient until May 31, 2011. Johnson Decl., pp. 1, 5.

had 'oversight' for all medical staff at FCI Sheridan." Johnson Decl., p. 6. As evidence of this oversight, he points to Dr. Westermeyer's ability to cosign for medical encounters. *Id.* However, when Karl Bergman, E.M.T. ("Bergman") requested that Dr. Westermeyer co-sign his medical intake examination of Johnson on January 14, 2011, Stephen Davis, D.O., cosigned instead. Robinson Decl., Ex. G, pp. 7-8. Since Dr. Davis held the same co-signing privilege as Dr. Westermeyer, that privilege does not prove that Dr. Westermeyer held a unique directorial role. It is more likely that Dr. Westermeyer had an oversight duty over nurses and medical technicians, such as Bergman, based on his training as a physician. And even if Dr. Westermeyer was temporarily acting as medical director for Dr. Davis, as Johnson states, it does not appear that Dr. Davis relinquished oversight to Dr. Westermeyer. Dr. Davis reviewed all of Dr. Westermeyer's examination notes. Westermeyer Decl., Ex. A, p. 6; Ex. B, p. 2; Ex. C, p. 3; Ex. E, p. 2. Thus, the record belies any conclusion that Dr. Westermeyer replaced Dr. Davis as the director of the prison medical staff during his time at FCI Sheridan.

Johnson also claims that surgery had been recommended prior to his incarceration. Sometime in the past, an orthopedic surgeon in Eugene recommended surgery. Robinson Decl., Ex. F, p. 1. Even though Johnson informed Dr. Bobek of this prior opinion, Dr. Bobek recommended conservative treatment and considered surgery only if that approach failed. *Id* at 4. Johnson did request surgery in a message left at Dr. Bobek's office, but he did not "elect" to have the operation, as he contends, because there is no record that Dr. Bobek ever offered to perform such surgery. *See* Johnson Decl., p. 8. The message taken from Johnson indicated as much: "[Patient] WOULD LIKE TO KNOW IF HE CAN HAVE SURGERY ON HIS BACK. PLEASE CALL [Patient] BACK TO LET HIM KNOW IF THIS CAN BE DONE." Robinson Decl., Ex. F, p. 5.

7 – FINDINGS AND RECOMMENDATION

Johnson also asserts that "PA Hall called [Johnson] back on November 8, 2010 to complete weight loss, physical therapy and cortisone injections and surgery will be scheduled afterwards at a meeting with him and Dr. Bobek a pre surgery conference on February 7, 2011." Johnson Decl., p. 8.  However, the record contains no facts to support that assertion.  Hall did return Johnson's call on November 8, 2010 (after someone else had left a message for Johnson on November 5, 2010), but only to recommend a dedicated home exercise, physical therapy program, and epidural steroid injection — in other words, the conservative treatment program. Robinson Decl., Ex. F, p. 5.  When Johnson returned for a follow-up on December 13, 2010, surgery was not discussed.  *Id* at 6-7.  Instead, noting slight improvements in Johnson's symptoms, Dr. Bobek scheduled a follow-up six weeks later.  *Id* at 7.  Dr. Bobek did not recommend surgery prior to Johnson's incarceration.

Nor did Dr. Bobek recommend surgery after consulting with Dr. Westermeyer.  Johnson contends that that Dr. Westermeyer's account of his consultation with Dr. Bobek is inaccurate. Johnson Decl., p. 3.  However, Dr. Bobek's hand-written and signed medical notes belie any claim that Dr. Westermeyer is committing perjury.  After speaking with Dr. Westermeyer, Dr. Bobek summarized Johnson's status as: "[Patient] does <u>not</u> have neurosurgical emergency as of last time I saw him."  Robinson Decl., Ex. F, p. 8.  Johnson simply appears to disagree with his physicians' opinions and, more specifically, with whether it was time to pursue surgery. According to the record, Dr. Bobek never even considered surgery as of Johnson's last examination before his incarceration.  Thus, there is no genuine dispute that Dr. Bobek did not recommend, either before or during Johnson's incarceration, that Johnson undergo back surgery.

///

///

8 – FINDINGS AND RECOMMENDATION

## FINDINGS

### I.    § 1983 Claims

Dr. Westermeyer seeks summary judgment against the § 1983 claims because he is not a state actor.  "To state a section 1983 claim, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law."  *Lopez v. Dep't of Health Servs.*, 939 F2d 881, 883 (9th Cir 1991).  Johnson's § 1983 claims are premised on the allegation that Dr. Westermeyer was employed by the federal government, if only for a short time.  Even assuming that Dr. Westermeyer was a federal employee, § 1983 "provides no cause of action against federal agents acting under color of federal law."  *Billings v. United States*, 57 F3d 797, 801 (9th Cir 1995).  He could only act under the color of state law if he conspired or acted in concert with state officials to deprive Johnson of his civil rights.  *Id.*  "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.'"  *Id* (citations and internal quotation marks omitted).  Johnson does not allege violations against state or county officials, or assert facts that suggest that Dr. Westermeyer acted in concert with state officials.  Thus, Dr. Westermeyer is not subject to liability under § 1983 for alleged violations of either Johnson's Eighth or Fourteenth Amendment rights.

Johnson requests that the court liberally construe his pleading as a "'*Bivens* 8th Amendment cruel and unusual punishment" claim based on "deliberate indifference to [his] serious medical needs and chronic pain complaint."  Johnson Decl., p. 1; Complaint, p. 7.[7]

---

[7] Johnson's Supplemental Complaint references a violation of his "14th Amendment rights to equal protection and due process" (docket #18, p. 1).  However, Johnson does not allege deprivation of any constitutional rights other than those protected by the Eighth Amendment.  Because no facts are alleged that imply a deprivation of substantive or procedural due process, other than a denial of access to the prison grievance process which he used (Complaint, p. 2), the court interprets this reference to indicate that

9 – FINDINGS AND RECOMMENDATION

Johnson alleges that Dr. Westermeyer violated his Eighth Amendment rights by not scheduling

back surgery.  A *Bivens* action "is the federal analog to an action against state or local officials

under § 1983" under which a plaintiff "seeks to hold federal officers individually liable for

constitutional violations."  *Starr v. Baca*, 652 F3d 1202, 1206 (9th Cir 2011), citing *Bivens v. Six*

*Unknown Named Agents of Fed. Bureau of Narcotics*, 403 US 388 (1971).  Johnson may not

assert any *Bivens* claims against Dr. Westermeyer if he contracted to treat prisoners through a

private corporation, such as Staff Care, Inc.  *See Minneci v. Pollard*, 132 S Ct 617, 622 (2012)

(federal inmates have no federal *Bivens* claim for damages against privately-run prison workers

because these workers are not federal employees); *see also Arredondo-Virula v. Adler*, 510 F

App'x 581, 582 (9th Cir 2013) ("A significant difference exists between [federal prison]

employees and independent contractors.").  However, for purposes of this motion, the court

assumes that that Dr. Westermeyer was a federal employee while treating Johnson.

   "A public official's 'deliberate indifference to a prisoner's serious illness or injury'

violates the Eighth Amendment ban against cruel punishment."  *Clement v. Gomez*, 298 F3d 898,

904 (9th Cir 2002), quoting *Estelle v. Gamble*, 429 US 97, 105 (1976).  The inmate "must

demonstrate that he was confined under conditions posing a risk of objectively, sufficiently

serious harm and that the officials had a sufficiently culpable state of mind in denying the proper

medical care."  *Id* (internal quotation marks omitted), citing *Wallis v. Baldwin*, 70 F3d 1074,

1076 (9th Cir 1995).  "[A] serious medical need is present whenever the failure to treat a

prisoner's condition could result in further significant injury or the unnecessary and wanton

infliction of pain."  *Id* (citations omitted).

---

the U.S. Constitution incorporates the Eighth Amendment against the states through the Due Process Clause of the Fourteenth
Amendment.  Of course, such reference is unnecessary, because Johnson does not name any state defendants.

Johnson contends that Dr. Bobek recommended surgery if he was incarcerated longer than six months. However, Johnson provides no evidence to support this conclusion. Dr. Bobek never determined that conservative treatment was unsuccessful and did not recommend a change in treatment after hearing Dr. Westermeyer's diagnosis over the phone. He did not require surgery within six months, as Johnson contends, but only recommended that surgery "be considered" at such time. Westermeyer Decl., Ex. D.

Furthermore, Johnson's claim of experiencing "severe, chronic" pain during the relevant time period (January 14 to March 31, 2011) is unsupported. Dr. Westermeyer clearly recognized the consistency of Johnson's pain, a factor that he considered in prescribing pain medication. Westermeyer Decl., ¶ 6 & Ex. C, p. 1. As for the severity, Dr. Westermeyer considered Johnson's pain "more chronic then [*sic*] acute." The court recognizes that "in deciding whether there has been deliberate indifference to an inmate's serious medical needs, we need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F2d 198, 200 (9th Cir 1989). However, this is not a case in which "prison officials and doctors deliberately ignored a prior physician's instructions for reasons unrelated to the medical needs of the prisoner." *Snow v. McDaniel*, 681 F3d 978, 986 (9th Cir 2012), *overruled on other ground by Peralta v. Dillard*, 744 F3d 1076 (9th Cir 2014), citing *Hamilton v. Endell*, 981 F2d 1062 (9th Cir 1992). Dr. Westermeyer's medical opinion was consistent and confirmed (even lauded) by Dr. Bobek. Westermeyer Decl., Ex. E. The only evidence that Johnson's pain was severe appears in Dr. Westermeyer's report that Johnson had "been down with back pain for 3 days." *Id*, Ex. C, p. 1. Although Johnson alleges that his pain confined him to a wheelchair by the time he filed this lawsuit (Response (docket #132), p. 3), that fact has no bearing on the treatment he received from Dr. Westermeyer based on his symptoms at that time.

11 – FINDINGS AND RECOMMENDATION

Even if Johnson could prove he was in danger of serious harm, he has not proven

deliberate indifference.  "The subjective component requires the inmates to show that the

officials had the culpable mental state, which is 'deliberate indifference to a substantial risk of

serious harm.'"  *Frost v. Agnos*, 152 F3d 1124, 1128 (9th Cir 1998), quoting *Farmer v. Brennan*,

511 US 825, 835 (1994).  Deliberate indifference is evidenced only when "the official knows of

and disregards an excessive risk to inmate health or safety; the official must both be aware of the

facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference."  *Clement*, 298 F3d at 904, quoting *Farmer*, 511 US at 837.

During the relevant time period (January 14 to March 31, 2011), neither Dr. Westermeyer nor

Dr. Bobek drew the inference that Johnson was at risk of serious harm if surgery was not

scheduled.  During his first examination of Johnson on February 9, 2011, Dr. Westermeyer

intentionally refused to schedule surgery, but did so before learning from Dr. Bobek that surgery

was a treatment option.  Dr. Bobek recommended surgery only as an option after six months of

incarceration.  That six-month period ended June 2011, two months after Dr. Westermeyer left

his post at FCI Sheridan.  It was impossible for Dr. Westermeyer to have performed any pre-

surgery procedures, such as an X-ray or MRI, during his employment because Johnson refused to

be treated by Dr. Westermeyer after March 4, 2011.  *See* Westermeyer Decl., ¶ 11.

In support, Johnson cites *Mahler v. United States*, 40 Fed App'x 415 (9th Cir 2002), in

which a federal correctional counselor failed to grant or follow-up on a prison physician's

request to provide Mahler a medical accommodation for his degenerative joint disease.  This

court denied summary judgment to the defendants on Mahler's claim for violation of his Eighth

Amendment rights.  Affirming that ruling, the Ninth Circuit explained:

> It is critical to this inquiry that [defendant] has advanced no reason
> whatever for denying the request that Mahler be housed on the first floor-

> no security or competing resources basis, for example.  To refuse *for no reason* — or not to consider at all — requests from a doctor and a prisoner to alleviate to some degree a prisoner's serious medical condition and thereby permit the exacerbation of the prisoner's injury or the wanton infliction of pain demonstrates deliberate indifference to medical needs.

*Id* at 418.

Like Mahler, Johnson has a chronic medical condition that preceded incarceration. However, Johnson's medical situation lacks the defining fact in *Mahler*, namely an unexplained refusal to grant a medically recommended accommodation.  As described above, Dr. Westermeyer concluded that surgery was unnecessary during the relevant period and was supported by Dr. Bobek.  Absent any evidence that Dr. Westermeyer knew that Johnson would suffer serious harm if he did not receive surgery during the period Dr. Westermeyer worked at FCI Sheridan, Johnson has failed to prove deliberate indifference

Finally, Johnson's allegations of deliberate indifference based on the overcrowding or underfunding at FCI Sheridan are irrelevant to this action.  Johnson simply has not shown that such factors were at any time under Dr. Westermeyer's control, or influenced his decisions in treating Johnson.

## II.    <u>Criminal Liability</u>

Dr. Westermeyer also seeks summary judgment against the claim for violating 18 USC § 242, a criminal statute, because it provides no ground for civil liability.  *Aldabe v. Aldabe*, 616 F2d 1089, 1092 (1980) (citation omitted).

A private citizen does not have the power to instigate prosecutions of alleged crimes. The Fifth Amendment precludes the prosecution of any person unless on a presentment or indictment of a Grand Jury.  The decision to investigate or prosecute a person for an alleged violation of a criminal statute is left to the discretion of the federal law enforcement agencies.

13 – FINDINGS AND RECOMMENDATION

*United States v. Armstrong*, 517 US 456, 464 (1977).  Such authorizes owe no duty to private citizens to prosecute any and every person against whom a complaint is made.  The courts lack the power to compel the prosecuting authorities to bring criminal charges against their discretion.  *Fields v. Soloff*, 920 F2d 1114, 1118 (2nd Cir 1990).  Thus, Dr. Westermeyer should be granted summary judgment against the claim for violating 18 USC § 242.

## III.    Privacy Act Claim

Dr. Westermeyer also seeks summary judgment on the claim for violating the Privacy Act, 5 USC § 552a, *et seq*, because the right of action under this statute only applies against the government.  "The private right of civil action created by the Act is specifically limited to actions against agencies of the United States Government.  The civil remedy provisions of the statute do not apply against private individuals." *Unt v. Aerospace Corp.*, 765 F2d 1440, 1447 (9th Cir 1985).  Because only the Federal Bureau of Prisons ("FBOP") would be the proper defendant in a Privacy Act claim, summary judgment should be granted to Dr. Westermeyer on this claim.

## IV.    ADA Claim

Dr. Westermeyer also seeks summary judgment against the ADA claim.  The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination by any such entity."  42 USC § 12132 (emphasis added).  By definition, the ADA does not apply to the federal government, federal employees, or private individuals.  A public entity is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and

14 – FINDINGS AND RECOMMENDATION

any commuter authority (as defined in section 502(8) of Title 45)." 42 USC § 12131(1); *United States v. Wishart*, 146 F App'x 171, 173 (9th Cir 2005). Moreover, Johnson's allegations of inadequate medical care do not evidence discrimination. *Bryant v. Madigan*, 84 F3d 246, 249 (7th Cir 1996) ("No discrimination is alleged; [plaintiff] was not treated worse because he was disabled. His complaint is that he was not given special accommodation. . . . The ADA does not create a remedy for medical malpractice."). Thus, Dr. Westermeyer should be granted summary judgment against the ADA claim.

## V.    Tort Claims

### A.    Negligence

Dr. Westermeyer seeks summary judgment against Johnson's negligence claim based on the lack of any supporting expert testimony. Johnson alleges that Dr. Westermeyer committed negligence both in his capacities as his treating physician and as medical director at FCI Sheridan. Under Oregon law, a negligence claim requires proof:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867, 870 (1988), citing *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987).

As a licensed physician, Dr. Westermeyer's duty of care is measured by the standard of care in the community. Johnson alleges that Dr. Westermeyer violated the applicable standard of care by failing to forward his medical records to the proper authorities within FBOP, failing to maintain his medical records or request applicable records from Dr. Bobek, and by failing to

15 – FINDINGS AND RECOMMENDATION

obtain outside medical consultation and treatment for his back pain.[8]  Complaint, pp. 5-7;

Supplemental Complaint, p. 2.  Dr. Westermeyer denies those allegations, stating: "As a licensed

physician practicing internal medicine, I am qualified to determine my patients' needs.  At all

times my actions and care met the standard of care for licensed physicians practicing internal

medicine."  Westermeyer Decl., ¶ 13.

"In most charges of negligence against professional persons, expert testimony is required

to establish what the reasonable practice is in the community."  *Getchell v. Mansfield*, 260 Or

174, 179, 489 P2d 953, 955 (1971).  "On the other hand, if the jury is capable of deciding what is

reasonable conduct without assistance from an expert medical witness no expert testimony is

necessary to establish the standard of care."  *Id* at 179-80, 489 P2d at 955 (citing the example in

which a surgeon was performing surgery without first sterilizing the instruments).  Johnson does

not present any expert testimony to define the controlling standard of care.  This court

recognizes, however, that since he is incarcerated, Johnson has had a limited ability to obtain

such testimony.

But even if Johnson had submitted expert testimony as to the standard of care, he has

failed to demonstrate that any continuing pain or disability was the result of Dr. Westermeyer's

conduct.  Assuming that Dr. Westermeyer breached the standard of care by not scheduling

surgery, requesting Dr. Bobek's treatment notes, or forwarding Dr. Bobek's consultation to

---

[8] Johnson alleges that Dr. Westermeyer bears liability for approximately 21 acts of negligence.  Complaint, pp. 5-7.  Johnson fails to prove the occurrence of some: the failure to answer Johnson's multiple Inmate Request Forms; the failure to keep or maintain accurate medical records for Johnson; medical neglect of Johnson's medical needs that resulted in prison staff requiring Johnson to perform physical labor; the failure to treat Johnson for 2 workers' compensation injuries (a March 7, 2011 fall that further injured his spine and broke his left foot, and three later falls that injured his right elbow and shoulder); prescribing Johnson medication that was incompatible with his hypertension and which caused his March 7, 2011 fall; the failure to process documentation for surgery or transfer him to a medical facility as Judge Aiken recommended during sentencing; the failure to maintain proper medical facilities or attract qualified staff at FCI Sheridan; his detention in a maximum security cell that deprived him of sleep and physical therapy; denial of Johnson's medical services while he was housed in the Segregated Housing Unit; denial of prescribed medications; withholding the name and professional status of his treatment provider; lack of respect, consideration, and dignity; denial of access to nutritious food and the chronic care clinic services; and denial of access to the chemistry panel.

prison authorities, no facts support the conclusion that but for those actions, Johnson would not be experiencing back pain.

### B.      Breach of Contract

Johnson also alleges that Dr. Westermeyer breached his contract with the FBOP to provide medical services to inmates at FCI Sheridan and that Johnson is a third-party beneficiary of that contract. Supplemental Complaint, p. 1. Dr. Westermeyer seeks summary judgment against this claim based on Johnson's failure to prove the existence of a contract or his status as a third-party beneficiary with enforceable rights.

As an initial matter, Dr. Westermeyer objects to admission of Johnson's statements regarding the existence of contracts between Staff Care, Inc. or the FBOP and Dr. Westermeyer based on lack of personal knowledge. With respect to evidence submitted in support of summary judgment motions, FRCP 56(c)(4) requires that the affidavits "must be made on personal knowledge, set out such facts as would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Johnson asserts, without any personal knowledge, that Dr. Westermeyer entered a contract with FBOP. Johnson Decl., p. 1. IN response, Dr. Westermeyer attests that he did not enter a contract with Staff Care, Inc., FCI Sheridan, the FBOP, or any other federal agency. Westermeyer Reply Decl. (docket #169), ¶ 3. Yet Dr. Westermeyer fails to explain how he performed "temporary contract work" for the FBOP without a contract. Westermeyer Decl., ¶ 2. That admission carries the implicit premise that Dr. Westermeyer entered into some contract with someone in order to perform work for the FBOP. For purposes of this motion, this court assumes the existence of a contract.

Oregon has adopted the Restatement (First) of Contracts § 133 as the rule governing the rights of third parties under a contract. *Johnston v. The Or. Bank*, 285 Or 423, 429-30, 591 P2d

746 (1979). "Section 145(a) is a special application of the principles stated in § 133(1)(a), which

describes the circumstances under which a person is a donee beneficiary of a contract." *Vale*

*Dean Canyon Homeowners Ass'n v. Dean*, 100 Or App 158, 165, 785 P2d 772, 776 (1990). It

provides as follows:

> A promisor bound to the United States or to a State or municipality by
> contract to do an act or render a service to some or all of the members of
> the public, is subject to no duty under the contract to such members to
> give compensation for the injurious consequences of performing or
> attempting to perform it, or of failing to do so, unless,
>
> > (a) an intention is manifested in the contract, as interpreted in the
> > light of the circumstances surrounding its formation, that the
> > promisor shall compensate members of the public for such
> > injurious consequences, or
> >
> > (b) the promisor's contract is with a municipality to render services
> > the non-performance of which would subject the municipality to a
> > duty to pay damages to those injured thereby.

Restatement (First) of Contracts § 145; *see also* Restatement (Second) of Contracts § 313.

Because Dr. Westermeyer was not contracted to perform services for a municipality,

subsection (b) does not apply. Since Johnson has not produced evidence that Dr. Westermeyer's

contract contained any express intent that Dr. Westermeyer must compensate prisoners for the

injurious consequences of his actions, subsection (a) also does not apply. Thus, summary

judgment should be granted to Dr. Westermeyer on the breach of contract claim.

## **RECOMMENDATION**

Dr. Westermeyer's Motion for Summary Judgment (docket #138) should be granted and

Johnson's Complaint (docket #2) should be dismissed, and a judgment should be entered in favor

of defendant.

///

18 – FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Monday, May 19, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED April 30, 2014.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

19 – FINDINGS AND RECOMMENDATION